*Decision will be entered under Rule 50.*

OREGON PULP AND PAPER COMPANY, A CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 101543. Promulgated September 24, 1942.

*Clarence D. Phillips, Esq.*, for the petitioner.
*John H. Pigg, Esq.*, for the respondent.

ARNOLD: This proceeding involves income tax deficiencies for 1936 and 1937 in the respective amounts of $28,929.61 and $35,747.48. By an amended answer respondent asks the Board to increase the deficiencies to $28,938.24 for 1936 and $44,004.14 for 1937. Three issues are presented, viz.: (1) Whether petitioner is entitled to a credit for a contract restricting the payment of dividends under section 26 (c) of the Revenue Act of 1936 for each of the taxable years, (2) the amount of interest, if any, that petitioner is entitled to deduct on certain income bonds issued by petitioner, and (3) whether petitioner is entitled to a deduction of $912.24 representing additional Oregon excise taxes for 1934 that were paid during 1936.

The facts were stipulated and as stipulated are adopted as our findings of fact. The facts and opinion pertinent to each issue will be treated separately.

### FINDINGS OF FACT.

The petitioner is an Oregon corporation, with its principal business office at Portland, Oregon. Its books were kept and its returns for the taxable years were made on the accrual basis. In its 1936 and 1937 returns, filed with the collector of internal revenue at Portland, Oregon, petitioner reported net income in the respective amounts of $158,344.63 and $122,961.25.

### ISSUE I.

FACTS.—Petitioner claimed a credit of $135,752.94 for 1936 and $105,691.09 for 1937 because of contracts restricting dividend payments. The amount of the credit claimed for each year equaled the amount of the taxpayer's adjusted net income. Respondent denied the credit for each year upon the ground that the provisions of the supplemental indenture (hereinafter more fully set forth) do not constitute such a contract as is contemplated by section 26 (c).

Under date of May 1, 1926, petitioner executed an indenture securing the payment of principal and interest on a $1,000,000 issue of first mortgage 6 percent bonds. By a second indenture, dated May 1, 1927, which supplemented the first, petitioner further secured the

payment of principal and interest of an additional issue of first mortgage 6 percent bonds in the amount of $330,000. The first mortgage bonds matured serially, as provided by the terms of the two indentures.

On September 1, 1932, petitioner's outstanding first mortgage 6 percent bonds aggregated $980,000. As of that date a further supplemental indenture was executed for the purpose of extending the maturities on all outstanding bonds for a period of four years beyond the present maturities. Extension of the maturities followed approval thereof by the bondholders and was effective during 1933. Thereafter, and at all times material to this proceeding, the supplemental indenture of September 1, 1932, was in full force and effect, and bonds deposited with the trustee were endorsed by the trustee, and the bondholders signed extension agreements, all in accordance with the provisions of the supplemental indenture.

Article IX of the original trust indenture provides in section 2 thereof that so long as the bonds remained unpaid "dividends shall not be paid on common stock in excess of the rate of six per cent (6%) per annum," except that the rate could be increased under certain circumstances immaterial to the present issue. Section 2, article III of the second trust indenture modified article IX, section 2, of the original indenture by providing that "so long as any of said bonds are outstanding it [petitioner] will pay no dividends on the common stock of the Company if the payment thereof would reduce the ratio of the current assets to current liabilities * * * below a ratio of two to one and * * * would reduce the net current assets of the Company below fifty per cent (50%) of the amount of bonds outstanding * * *."

In securing the extension on its bonds petitioner covenanted with each bondholder and with its trustee, that it would pay 6½ percent interest during the four-year extension, that it would issue no further bonds under the deeds of trust, and that "it will pay no cash dividends except":

(a) After the bonded indebtedness shall be reduced to $600,000.00, the Company may thereafter pay dividends from earnings accrued subsequent to January 1, 1933 in an amount equivalent to the principal amount by which outstanding bonds are reduced below $600,000.00.

(b) The Company may pay from earnings accrued subsequent to January 1, 1933 dividends upon any preferred stock which it may thereafter sell for cash; provided, that dividends on such stock shall not be paid in any year at a rate greater than ten per cent of the net cash received from the sale of the stock on which paid.

As of January 1, 1936, December 31, 1936, and December 31, 1937, petitioner's outstanding first mortgage bonds aggregated $980,000, $943,500, and $856,500, respectively. During the period January 1,

1933, to December 31, 1937, no preferred stock was issued or sold by petitioner for cash.

Petitioner's assets and liabilities at the beginning and close of the calendar years 1936 and 1937, its common and 8 percent cumulative preferred stock, and its surplus earnings and profits, are shown in the following condensed table:

|  | Jan. 1, 1936 | Dec. 31, 1936 | Dec. 31, 1937 |
|---|---|---|---|
| **ASSETS** | | | |
| *Current:* | | | |
| Cash | $266,978.51 | $345,600.53 | $275,257.13 |
| Notes and accounts receivable, and other current assets | 1,054,983.41 | 899,416.72 | 1,031,181.38 |
| *Other:* | | | |
| Deferred charges, mortgage, etc., and capital assets | 2,803,536.50 | 2,864,366.44 | 2,861,405.51 |
| Total | 4,125,498.42 | 4,109,383.69 | 4,167,844.02 |
| **LIABILITIES** | | | |
| *Current:* | | | |
| Notes and accounts payable, accrued expenses, etc | 444,360.55 | 328,812.84 | 378,462.74 |
| *Other:* | | | |
| Mortgage or bonds | 980,000.00 | 993,000.00 | 1,585,300.00 |
| Preferred stock (8% cumulative) | 800,000.00 | 740,766.67 | 229,800.00 |
| Common stock | 1,296,700.00 | 1,296,700.00 | 1,296,700.00 |
| Surplus | 604,437.87 | 750,104.18 | 677,581.28 |
| Total | 4,125,498.42 | 4,109,383.69 | 4,167,844.02 |

No dividends, cash or otherwise, were declared or paid on petitioner's outstanding preferred or common stock during the period 1932 to 1937, inclusive.

Petitioner's bylaws applicable to the taxable year contained the following provisions in article B, subdivision (a) thereof:

The holders of the preferred stock shall be entitled to receive out of the surplus or net profits of the corporation, dividends at the rate of eight per cent (8%) per annum; and no more, such dividends to be cumulative and to be payable to the stockholders after being declared by the Board of Directors. All dividends which shall have accumulated on preferred stock shall be paid before any dividend is declared on common stock.

Petitioner's preferred stock certificates contained a provision to the same effect as the foregoing quotation.

OPINION.—The first issue is whether petitioner is entitled as a matter of law to the credit granted by section 26 (c) (1) of the Revenue Act of 1936 [1] in computing its surtax on undistributed profits under section 14 of the 1936 Act. All pertinent facts have been stipulated

---

[1] SEC. 26. CREDITS OF CORPORATIONS.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS.—

(1) PROHIBITION ON PAYMENT OF DIVIDENDS.—An amount equal to the excess of the adjusted net income over the aggregate amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. \* \* \*

or appear in documentary exhibits attached to and made a part of the stipulated facts. The issue turns upon the scope and extent of the contract restrictions, that is, whether the prohibition against the distribution of "cash dividends" applies also to other dividend distributions. Petitioner cites and relies upon our decision in *Columbia River Paper Mills*, 43 B. T. A. 263, which is stated to be "directly in point" and "conclusive of the question in this case." On brief counsel for taxpayer, who was also counsel for *Columbia River Paper Mills*, pointed out that petitioner and the latter were companion corporations, operating paper plants in adjoining states, using a joint business office and having similar business problems.

Our analysis of the stipulated facts in this case with the stipulated facts in the *Columbia River Paper Mills* case convinces us that the corporations had similar business problems which were handled identically. Furthermore, our comparative analysis of the stipulated facts indicates that it would be difficult to find two more nearly parallel cases. Each had outstanding common and 8 percent cumulative preferred stocks. Each was in arrears on dividends on preferred stock since September 1932. Each had an outstanding bond issue secured by a trust indenture that had been executed under similar circumstances and with substantially similar restrictions therein on dividend distributions. Each executed a supplemental indenture in September 1932 carrying substantially the same restrictions on distributions to stockholders. Each executed extension agreements with their bondholders agreeing that no "cash dividends" would be paid to the common stockholders except under circumstances not here material. Each had a bylaw which required the payment of all accumulated 'dividends on preferred stock before "any dividend is declared on common stock," and word for word the provisions of this particular bylaw were identical. Other similarities exist, but those mentioned are deemed sufficient to demonstrate that the same principle should control each case.

In holding that the taxpayer was entitled to a credit under section 26 (c) (1) in the *Columbia River Paper Mills* case, *supra*, the Board stated that "in the circumstances of this case the petitioner could not have made any distribution to its stockholders except in the form of cash." (P. 266.) However, we agreed with the Commissioner that "if a dividend could have been paid by the petitioner during 1936 in any form other than cash the petitioner has not brought itself within the letter of section 26 (c) (1) of the taxing statute." (P. 266.)

The Commissioner appealed the Board's decision in *Columbia River Paper Mills* case, and the Circuit Court of Appeals for the Ninth Circuit reversed, *Commissioner* v. *Columbia River Paper Mills*, 127 Fed. (2d) 558. The Circuit Court agreed that if the tax-

payer there could have distributed a dividend during 1936 in any form other than cash it had not brought itself within the taxing statute. It pointed out that the distribution of a cash dividend was prohibited by the contract with the trustee. But it denied that the bylaw restriction which prohibited "any dividend" on common stock while preferred dividends were in arrears constituted a written contract executed by the corporation within the meaning of the taxing statute. The court held, therefore, that, since there was no contract as described in the statute which prohibited the distribution of a stock dividend, the credit should be denied.

In *Helms Bakeries*, 46 B. T. A. 308, and *Valentine-Clark Corporation*, 46 B. T. A. 821 (now on appeal C. C. A., 8th Cir.), we had before us the question of the effect of written contracts restricting the payment of cash dividends. We there held that as dividends in form other than cash were not prohibited the credit was not allowable under section 26 (c) (1). See also *United States* v. *Dakota Tractor & Equipment Co.*, 125 Fed. (2d) 20. We therefore hold petitioner is not entitled to the credit claimed and on this issue we sustain the respondent.

## ISSUE II.

FACTS.—On December 1, 1936, petitioner adopted a plan under which it offered to issue 5 percent income bonds, dated February 1, 1936, and maturing January 1, 1966, in exchange for its outstanding preferred stock and accumulated dividend rights thereon, on the basis of $133.33⅓ face value of bonds for each share of preferred stock. Interest on the bonds was to be paid annually, if earned, and, if not earned in whole or in part in any year, such portion of the interest was to accumulate and be payable before any dividends were paid on any class of stock.

The proposal was submitted by letter dated December 1, 1936, to petitioner's preferred stockholders, together with forms of the proposed income bonds and coupons. Stockholders consenting to the consummation of the plan were requested to endorse their stock certificates and forward them to the agent designated by petitioner to make the exchange contemplated. The "5% income bond" provided, *inter alia*, for interest payments "from February 1, 1936, to and including December 31, 1965"; that interest was payable on June 1, 1937, and on each June 1 thereafter during the term of the bond if and to the extent that "available net income," as therein defined and as determined and declared by petitioner's board of directors, should be sufficient for such payment; that interest should be cumulative from and after February 1, 1936; that in any event all accumulated and unpaid interest should become due and be pay-

able at maturity; that the bonds might at petitioner's option be redeemed, prior to maturity on any interest-paying date for the principal amount plus accumulated and unpaid interest; that in the event of liquidation the bonds, plus accumulated interest, should be paid at face value before distribution of any assets to any class of stockholders; and that petitioner would not declare or pay any dividends upon any class of stock so long as any interest upon said bonds might be unpaid.

On February 1, 1936, the accumulated and unpaid dividends on petitioner's preferred stock amounted to $33.33⅓ per share, and on December 1, 1936, to $40 per share.

Pursuant to the above plan the petitioner issued its 5 percent income bonds in exchange for preferred stock and accumulated dividend rights thereon in the principal amounts of $49,500 for 1936 and $679,300 for 1937, with the result that such bonds were outstanding as of December 31, 1936, and December 31, 1937, in the principal amounts of $49,500 and $728,800, respectively.

The issuance and exchange of $49,500 of income bonds for preferred stock in 1936 occurred on various dates during the period December 26 to 31, 1936. On its 1936 return petitioner claimed a deduction of $2,268.75 as representing interest paid or accrued in respect of the principal amount of the income bonds outstanding on December 31, 1936. Of this amount the sum of $26.62 represents the portion thereof attributable to the period between the date of the exchange and the close of the year; the balance, $2,242.13, represents the portion thereof attributable to the period between February 1, 1936, and the date of the exchange.

The issuance and exchange of $679,300 of income bonds for preferred stock in 1937 occurred on various dates during the calendar year 1937. On its 1937 return petitioner claimed a deduction of $67,737.91 as representing interest paid or accrued in respect of the principal amount of income bonds outstanding on December 31, 1937. Of this amount the sum of $25,463.88 represents the portion thereof attributable to the calendar year 1937, in respect of income bonds issued in 1936, and the portion thereof attributable to the period between date of exchange in 1937 and the close of that year. The balance, $42,274.03, represents the portion attributable to the period between February 1, 1936, and the various dates of issue and exchange in 1937.

In determining the deficiencies herein respondent disallowed interest deductions as claimed by petitioner in the amounts and to the extent of $2,242.13 for 1936 and $42,274.03 for 1937 upon the ground that these portions of interest deductions claimed did not represent

interest on indebtedness within the meaning of section 23 (b) of the Revenue Act of 1936. By his amended answer respondent asserts that he erroneously allowed deductions of $26.62 for 1936 and $25,-463.88 for 1937 as and for interest paid and accrued in respect of the income bonds outstanding at the end of those years and asks for increased deficiencies accordingly.

The amounts of $2,268.75 and $67,737.91 represented interest accrued or paid by petitioner on its 5 percent income bonds for the respective years 1936 and 1937.

OPINION.—This issue requires our determination of the amount of interest on certain 5 percent income bonds that petitioner is entitled to deduct under section 23 (b) of the Revenue Act of 1936. The bonds were exchanged for preferred stock during the last few days of December 1936 and during 1937. The bonds bore interest from February 1, 1936, regardless of when the exchange occurred, and petitioner deducted interest on its 1936 and 1937 returns upon the basis of bonds outstanding at December 31, 1936 and 1937, the bonds issued in 1937 bearing interest from February 1, 1936.

Respondent, while allowing a deduction of interest on said bonds for each year in determining the deficiencies herein, has by amended answer denied the right to any interest deduction and has asked for increased deficiencies. Respondent cites and relies, *inter alia*, upon our decision in *Journal Co.*, 44 B. T. A. 460, and *Pacific Southwest Realty Co.* v. *Commissioner*, 128 Fed. (2d) 815, affirming 45 B. T. A. 426. Petitioner cites and relies upon our decision in *Columbia River Paper Mills*, 43 B. T. A. 104, which it urges conclusively determined the question at issue.

Subsequent decisions by the courts have strengthened petitioner's contention. The *Journal Co.* case, *supra*, was reversed in *Journal Co.* v. *Commissioner* (C. C. A., 7th Cir.), 125 Fed. (2d) 349, the court holding that the payment therein was interest on indebtedness, and not a part of the purchase price, and the *Columbia River Paper Mills* case, *supra*, was affirmed by the U. S. Circuit Court of Appeals for the Ninth Circuit, 126 Fed. (2d) 1009. The latter case, factually, is very similar to the present, and in our opinion controlling. The court there pointed out that it was plainly the intent of the taxpayer that preferred stockholders who exchanged their stock for bonds should receive interest at the designated rate from the date of the bonds. The court further pointed out that the situation was one where the parties to the transaction, being free to contract, had agreed on a definitely ascertainable sum as compensation for the use of money over a stated period of time. The court thought such compensation was interest as commonly understood and therefore deductible

under section 23 (b), Revenue Act of 1936. We do not find the *Pacific Southwest Realty Co.* case, *supra*, applicable. On this issue we sustain the petitioner.

ISSUE III.

FACTS.—During 1935 petitioner made certain entries on its books of account the effect of which was to reduce the credit balance of its reserve for depreciation account with a corresponding increase in the credit balance of its surplus account. These entries or adjustments were based upon and were the result of certain depreciation adjustments made in connection with petitioner's 1933 and 1934 Federal income tax returns by the respondent. By reason of these adjustments the Oregon taxing authorities demanded from petitioner during 1936 the payment of additional Oregon excise taxes based upon 1933 and 1934 net income. During 1936 petitioner paid the State of Oregon $912.24 additional excise taxes for 1934.

In its return for the year 1936 the petitioner claimed a deduction of said $912.24. In his determination of the deficiency for 1936 the Commissioner disallowed the deduction so claimed by petitioner "for the reason that, as your books are kept and your returns are filed on the accrual basis, the tax in question is allowable as a deduction only for the year in which the income upon which it was based was earned."

OPINION.—Our findings show that petitioner paid the State of Oregon during 1936 certain additional excise taxes for the year 1934. Although petitioner is on the accrual basis, it seeks to deduct said payment from its 1936 gross income. The rule is well established that taxes accrue when all events have occurred that fix the amount of the tax and determine the taxpayer's liability to pay it. *United States v. Anderson*, 269 U. S. 422; *Haverty Furniture Co.*, 20 B. T. A. 644; *Floyd, Inc.*, 43 B. T. A. 101; *Rawlings Manufacturing Co.*, 44 B. T. A. 161; *Guy T. Gibson, Inc.*, 46 B. T. A. 1015.

The deduction which petitioner seeks to take was not a proper deduction from its 1936 gross income. All events had transpired prior to 1936 which fixed the amount and the liability of petitioner to the State of Oregon for the 1934 excise tax. Petitioner erroneously computed the amount of its tax to the state, but this error would not alter the correct amount of the tax, nor petitioner's liability therefor. The subsequent discovery of the error and the correction thereof in 1936 related back to the taxable year in which the mistake occurred. *Haverty Furniture Co.*, *supra*, p. 646. The determination of the respondent as to this issue is approved.

Reviewed by the Board.

Decision will be entered under Rule 50.

LEECH dissents.

SMITH, dissenting: During 1936 the petitioner, which kept its books of account and made its returns upon the accrual basis, was required to pay an additional Oregon excise tax of $912.24, based upon its net income for 1934. The occasion for the payment of this tax was that the respondent in the adjustment of petitioner's income tax return for 1934 disallowed the deduction of a part of the allowance for depreciation claimed by the petitioner in its income tax return. The petitioner acquiesced in the disallowance of the deduction of the depreciation and paid any additional income tax arising therefrom to the United States. It adjusted its books of account in 1935 to show an increase in the surplus for 1934. The State of Oregon in 1936 claimed an additional excise tax for 1934 and the petitioner in 1936 paid the $912.24 demanded. The Board approves the respondent's disallowance of this deduction upon the ground that the amount was properly chargeable against the petitioner's gross income for 1934.

The question as to when an expense becomes an accrued liability is covered by the Commissioner's regulations. It was early recognized in the administration of the income tax law that oftentimes some of a taxpayer's accrued income and some of his accrued deductions were not determined until a later year. It was impracticable to follow meticulously the rule that every accrued item of income and every accrued item of expense be reported in the year of accrual. The Commissioner therefore provided in his regulations (see article 43–2 of Regulations 86 and Regulations 94, promulgated under the Revenue Acts of 1934 and 1936, respectively) that taxpayers making their returns of income upon the accrual basis should allocate to the proper year accrued items of income and accrued items of expense. The regulations provided, however:

* * * It is recognized, however, that particularly in a going business of any magnitude there are certain overlapping items both of income and deduction, and so long as these overlapping items do not materially distort the income they may be included in the year in which the taxpayer, pursuant to a consistent policy, takes them into his accounts. * * *

In the instant proceeding it was clearly impossible for the petitioner to know in 1934, or at the time it was required to file its income tax return for 1934, the additional excise tax which would be demanded of it by the State of Oregon for the year 1934. There was no additional excise tax due the State of Oregon at that time. Demand was made upon petitioner for the payment of the additional excise tax for 1934 in 1936. The petitioner treated it as an accrued item for 1936.

I see no reason why petitioner should not be allowed the deduction from gross income of 1936 of the $912.24 which was demanded of it by the State of Oregon and paid in that year. It was impossible for the petitioner to know prior to 1936 that it had this liability.

782

The income tax acts should be administered in a sensible fashion. A sensible construction of the income tax acts warrants the petitioner to deduct from the gross income of 1936 the $912.24 here in question. It is unreasonable in my opinion to say that the petitioner is not entitled to the deduction. The Commissioner's regulations allow it.

ARUNDELL agrees with this dissent.