Pressed Steel Car Company, Inc. v. Commissioner.
Pressed Steel Car Co. v. Commissioner
Docket No. 107623.
United States Tax Court
1944 Tax Ct. Memo LEXIS 136; 3 T.C.M. (CCH) 868; T.C.M. (RIA) 44279; August 16, 1944
*136 1. Respondent, on whom rested the burden of proof of the issue, to establish that a certain transaction constituted a tax-free reorganization under section 112(g)(1)(B) of the Revenue Act of 1936, as amended by sections 213(f) and (g) of the Revenue Act of 1939. 2. Petitioner agreed to pay certain 15-year debentures dated as of January 1, 1936, with interest from that date. Petitioner was organized on July 24, 1936 and began business on July 29, 1936. It accrued on its books in 1936 the interest for the entire year. The amount so accrued is deductible from gross income. Commissioner v. Columbia River Paper Mills, 126 Fed. (2d) 1009, and other cited cases followed. 3. Dividends paid credit allowed for dividends paid to subsidiary. Helvering v. Credit Alliance Corporation, 316 U.S. 107. Lee W. Eckels, Esq., 2812 Grant Bldg., Pittsburgh, Pa., and John E. Laughlin, Esq., for the petitioner. J. Harrison Miller, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined a deficiency of $42,515.42 in the petitioner's income tax for the period from July 29, 1936 to December 31, *137 1936, inclusive. In his answer to the amended petition the respondent prayed that the deficiency be increased to $63,442.69 by reason of excessive depreciation originally allowed by him in his notice of deficiency. The issues now in controversy are: 1. The proper amount of depreciation allowable on certain assets transferred to the petitioner by the Pressed Steel Car Company of New Jersey. The basis of such depreciation rests on the question whether the transaction by which the petitioner acquired the assets was or was not a reorganization in which no gain or loss is recognized under section 112 of the Revenue Act of 1936. Sections 213 (f) and (g) of the Revenue Act of 1939, amending portions of section 112 of the Revenue Act of 1936, are challenged by the petitioner as violative of the Fifth Amendment of the Constitution if they should be applied to the said transaction. 2. The deductibility of interest, accrued and paid as such, on the petitioner's debentures dated as of January 1, 1936 but issued on July 29, 1936. 3. The allowance of a dividends-paid credit of $122,753.05, of which the sum of $40,000 was allocated to a wholly owned subsidiary. Other issues were conceded. Appropriate *138 adjustment on account of the petitioner's income tax liability to the State of Pennsylvania will be made upon the recomputation under Rule 50. Findings of Fact Certain facts were stipulated and as so stipulated are adopted as findings of fact. In so far as material to the issues, they are as follows: The petitioner is a Pennsylvania corporation having its principal office in Pittsburgh, Pennsylvania. The petitioner was incorporated on July 24, 1936 and commenced operation as a going concern on July 29, 1396. On June 15, 1937 the petitioner filed its corporation income and excess-profits tax return on the accrual basis for the taxable year ended December 31, 1936 (i.e., the period from July 29, 1936 to December 31, 1936) with the collector of internal revenue at Pittsburgh, Pennsylvania. In its return the petitioner reported taxable net income in the amount of $46,124.60 and liability for normal tax in the amount of $5,690.60. In his notice of deficiency the respondent determined an income tax deficiency against the petitioner in the amount of $42,515.42 for such taxable year. In his answer to the amended petition the respondent claimed an increased deficiency for such taxable year *139 in the amount of $63,442.69. Pressed Steel Car Company of New Jersey, hereinafter called the old company, was organized as a corporation under the laws of the State of New Jersey on January 12, 1899. In 1933 receivers for the old company were appointed by the United States District Court for the Western District of Pennsylvania, hereinafter called the District Court, and such receivers operated the business of the old company until June 13, 1934. On June 13, 1934, pursuant to a petition for reorganization under the provisions of Section 77B of the act entitled "An Act to Establish a Uniform System of Bankruptcy Throughout the United States," approved July 1, 1898, as amended (hereinafter referred to as the Bankruptcy Act), the District Court appointed temporary trustees of the property of the old company with authority to operate its business, and subsequently appointed permanent trustees with similar authority. Such permanent trustees, hereinafter referred to as the trustees, operated the business of the old company until July 29, 1936. The proceeding under Section 77B of the Bankruptcy Act was entitled "In the Matter of Pressed Steel Car Company of New Jersey, Debtor, No. 18779, *140 In re Reorganization under Section 77B of the Bankruptcy Act," and is hereinafter referred to as the reorganization proceeding. On July 27, 1936 a plan of reorganization, hereinafter referred to as the Plan, was approved and confirmed by the District Court. The order confirming the Plan and directing the transfer of assets is hereinafter referred to as the confirmation order. The Plan set forth the existing securities, liabilities and debts of the old company and the proposed new securities to be issued by the new company. It also prescribed the treatment of existing securities and obligations not affected by the Plan. It provided for the assumption of such liabilities of the old company and its subsidiaries by the new company. The Plan contemplated the acquisition of from $1,750,000 to $2,150,000 of new money to be used for working capital and other purposes. The stockholders were given the opportunity to furnish all or a part of the new money. If the stockholders should not choose to contribute all of the new money, the General American Transportation Corporation, hereinafter called General American, had agreed to take not less than 350,000 shares of the first preferred stock of *141 the new company at $5 a share. The Plan also established the terms of the new 15-Year 5% Debentures to be dated as of January 1, 1936, maturing January 1, 1951, and entitled to interest from January 1, 1936 at the rate of 5 per cent per annum. The interest accruing from and after January 1, 1936 was made to constitute a fixed obligation of the new company. The confirmation order, a document containing 35 printed pages and over 150 pages of exhibits, provided in great detail the successive steps and manipulation of the securities required to consummate the Plan. The order recited that the Plan was fair and equitable and had been duly accepted according to law. The order approved the form of indentures, agreements, certificates, and the instrument of transfer conveying the properties and assets of the old company to the petitioner. The order then directed the old company and the trustees to transfer to the petitioner all of the properties and assets, of every nature and description, of the old company, and also directed that the petitioner should issue and deliver to the trustees the new securities in accord with the terms and provisions of the Plan. The order directed that General *142 American should deposit $1,750,000 to be held in escrow temporarily for the purpose of purchasing certain outstanding trustees' certificates and ultimately to acquire 314,234 shares of the first preferred stock of the petitioner for General American and 34,766 shares of such stock for the warrant agent under the warrant agreement, by which the warrant-holders were entitled to purchase the same amount of such stock, according to the terms provided therein. General American was to receive 30,000 shares of new common stock. On July 29, 1936 there were outstanding in the hands of the public the following securities of the old company: (a) $3,000,000 principal amount of unsecured Ten-Year Five Percent Convertible Gold Debentures, hereinafter referred to as the 10-Year Debentures, due January 1, 1933, issued under indenture dated December 30, 1922, between the old company and the New York Trust Company as trustee, all of which were then due and unpaid. No interest thereon had been paid since July 1, 1932. Interest thereon accrued from July 1, 1932 to January 1, 1936 amounted to $525,000. (b) $387,500 principal amount of unsecured 15-Year 5% Convertible Gold Debentures, hereinafter referred *143 to as the 15-Year Debentures, due January 1, 1943, issued under a trust agreement dated January 1, 1928 between the old company and the New York Trust Company as trustee. No interest had been paid on such debentures since January 1, 1933. Interest thereon, accrued from January 1, 1933 to January 1, 1936, amounted to $58,125. (c) $411,000 principal amount of Illinois Car & Equipment Company 5% Gold Bonds due January 1, 1948, issued under a first mortgage indenture dated April 14, 1898, between Illinois Car & Equipment Company and The Illinois Trust & Savings Bank as trustee, under which Continental Illinois National Bank & Trust Company is successor trustee. The bonds were assumed by Western Steel Car & Foundry Company, as transferee of the properties covered by said mortgage by agreement dated February 7, 1912, and the old company became obligated in respect thereto pursuant to an agreement of merger dated January 20, 1926 between the old company and Western Steel Car & Foundry Company. All interest on the bonds had been currently paid by the receivers and the trustees pursuant to orders of the court. (d) $240,000 principal amount of Steel Car Equipment Trust Certificates, Series *144 B, due in serial installments to March 1, 1938, issued under an Equipment Trust Agreement dated August 25, 1927 between the old company, the New York Trust Company as trustee, and Steel Car Equipment Company. The old company had unconditionally guaranteed by endorsement payment of the principal of the certificates and dividends thereon. Installments of principal and dividends on the certificates had been paid currently and no default in payment of either principal or interest had occurred. (e) A bond representing a balance of indebtedness in the principal amount of $126,000, the last extension of which expired on May 3, 1936, bearing interest at the rate of 5 per cent per annum, which interest was paid up to May 3, 1936, and secured by a mortgage on property owned by Fidelity Land Company, a subsidiary of the old company. (f) $270,000 principal amount of Lincoln Gas Coal Company First Mortgage Twenty Year 5% Sinking Fund Gold Bonds due November 1, 1937, issued under a first mortgage indenture dated November 1, 1917 between Lincoln Gas Coal Company and the New York Trust Company as trustee, which bonds were secured by a mortgage on property owned by Lincoln Gas Coal Company. The *145 old company had guaranteed payment of both the principal of and interest on the bonds. All of the bonds had theretofore been declared due and payable, and payment of the bonds guaranteed by the old company had been demanded. (g) 136,003.4 shares of 7% Preferred Stock of the par value of $100 per share of the old company, including the following: (i) 162 shares reserved for exchange for certain shares of a previous issue of preferred stock of the old company, the certificates for which had not been surrendered; (ii) Scrip for an aggregate of 3.6 shares; (iii) 28.4 shares reserved for exchange for 142 shares of a previous issue of common stock of the old company, the certificates for which had not been surrendered, but excluding certain shares owned by the old company which were to be cancelled. (h) 410,814 shares of common stock without par value of the old company, including 7,098 shares of common stock reserved for exchange for certain shares of a previous issue of common stock of the old company, the certificates for which had not been surrendered, but excluding certain shares owned by the old company which were to be cancelled. As of July 29, 1936 the following claims, not *146 entitled to priority of payment under the Bankruptcy Act, had been filed in the reorganization proceeding and allowed: (a) $3,387,500 principal amount based upon the 10-Year Debentures and the 15-Year Debentures described heretofore. (b) $583,125 interest accrued on said debentures to January 1, 1936. (c) $303,631.83 principal amount of miscellaneous claims, including a claim for $270,000 based upon the guarantee of the Lincoln Gas Company bonds, described above, by the old company. (d) $13,312.13 interest accrued on said miscellaneous claims to January 1, 1936. As of July 29, 1936 certain claims, not entitled to priority of payment under the provisions of the Bankruptcy Act, amounting to $46,369.92, had been filed in the reorganization proceeding, but were disputed by the trustees, and had not been allowed by the District Court. Interest accrued on said claims to January 1, 1936 amounted to $7,380.56. On July 29, 1936 there were outstanding in the hands of the public $2,500,000 principal amount of trustees' certificates of indebtedness, bearing interest at the rate of 5 per cent per annum, payable on or before January 1, 1937. These certificates of indebtedness had been issued *147 and sold by the trustees pursuant to an order of the District Court dated January 17, 1936. On July 29, 1936 there were certain expenses of reorganization and costs of administration not then determined, but which were thereafter determined and allowed by the District Court in the following amounts: Allowances to trustees, counsel, com-
mittees, etc., approved in reorgani-
zation proceedings
$896,857.74
Compensation for services rendered in
preparation of account, etc., H. J.
Gearhart
3,000.00
Expense of auditors and clerks in pre-
paring account
2,000.00
Insurance premiums on Trustees' Bond
2,206.42
Services and expenses, The New York
Trust Co.
3,213.89
Disbursements and expenses, attor-
neys Reed, Smith, Shaw & McClay
1,708.18
Disbursements and expenses, attor-
neys Thorp, Bostwick, Reed & Arm-
strong
1,057.18
Audit fee and expenses, Main & Com-
pany
11,856.89
Services court reporting
1,050.62
Advertising, reorganization, etc.
8,850.09
Printing, postage and mailing notices
to creditors, etc.
10,487.80
Miscellaneous trusteeship expenses
4,699.29
Total
$964,488.10
On July 29, 1936, pursuant to the confirmation order, the petitioner issued and delivered to the *148 trustees, in temporary certificate form, the following securities: (a) $4,341,319.44 principal amount of Fifteen-Year 5% Debentures due January 1, 1951, hereinafter referred to as new debentures, to be applied against claims theretofore allowed by the District Court in the aggregate amount of $4,274,256.83 and against claims not theretofore, but which were thereafter, allowed by the District Court in the aggregate amount of $67,062.61. (b) 81,602.04 shares of 5% Convertible Second Preferred Stock having a par value of $50 per share, hereinafter referred to as the second preferred stock. (c) 268,706.9 shares of common stock having a par value of $1.00 per share, hereinafter referred to as the new common stock. Simultaneously with the issuance and delivery of such securities, the trustees executed and delivered an instrument of transfer and conveyance in the form provided by the confirmation order, and the petitioner thereupon took possession of all of the assets theretofore held by the trustees, except the sum of $750,000 in cash, which sum was retained by the trustees, pursuant to the Plan and the confirmation order, and assumed all of the liabilities of the trustees and of the *149 old company. On July 29, 1936 General American and its associates paid to the trustees the sum of $1,750,000, in accordance with paragraph Ninth of the confirmation order. Thereafter the trustees purchased and cancelled $1,850,000 principal amount of the trustees' certificates of indebtedness outstanding in the hands of the public; paid interest accrued on those certificates and on $650,000 principal amount of trustees' certificates of indebtedness remaining in the hands of the public; paid various expenses of reorganization and costs of administration; and remitted to the petitioner the balance of said fund of $2,500,000, amounting to $26,089.77, remaining in their hands after making said payments. On September 24, 1936 the United States Circuit Court of Appeals for the Third Circuit entered an order at No. 6226 October Term, 1936, in a proceeding entitled John F. Gilchrist et al., Appellants v. Pressed Steel Car Company of New Jersey, a corporation, Debtor, Appellee, approving an agreement dated September 21, 1936 between a committee for the protection of preferred stockholders of Pressed Steel Car Company and General American and its associates, which order made that agreement *150 a part of the Plan and confirmation order as a supplement thereto, and as so supplemented, affirmed the confirmation order and orders preliminary thereto from which appeals had been taken, and directed that the Plan and confirmation order be carried out and put into effect. On October 14, 1936, pursuant to the Plan, the confirmation order and the order of the United States Circuit Court of Appeals for the Third Circuit dated September 24, 1936, the petitioner issued and delivered to General American 350,000 shares of the petitioner's 5% cumulative convertible first preferred stock, hereinafter referred to as the first preferred stock, by the issuance and delivery of 315,234 shares thereof directly to General American and 34,766 shares thereof to The New York Trust Company, as warrant agent, and also issued and delivered 80,000 shares of the first preferred stock to said warrant agent for distribution to the subscribers therefor, viz., holders of securities of and claims against the old company. On the same date General American, out of the 315,234 shares of first preferred stock received as hereinabove indicated, delivered to the warrant agent 50,321 shares of such first preferred *151 stock to take care of the additional shares to be purchased by the holders of the 7 per cent preferred stock of the old company in accordance with the order of the United States Circuit Court of Appeals for the Third Circuit dated September 24, 1936, and also delivered to the warrant agent 8,710.71 shares of such first preferred stock to take care of an oversubscription for such stock by the holders of the 7 per cent preferred stock and common stock of the old company. On October 15, 1936, pursuant to the Plan and the confirmation order as supplemented by the order of the United States Circuit Court of Appeals for the Third Circuit, Kuhn, Loeb & Company, reorganization managers, issued a notice to the holders of securities of and claims against the old company, and on the same date The New York Trust Company, as distributing agent, commenced distribution of the new securities as provided in the Plan and confirmation order, and distribution was made in due course as follows: (a) To holders of the 10-Year Debentures, as above described, for each $1,000 principal amount thereof and for all accrued unpaid interest thereon from July 1, 1932 to January 1, 1936 (such unpaid interest amounting *152 to $175 per $1,000 principal amount): (i) $1,175 principal amount of new debentures bearing interest from January 1, 1936; and (ii) Warrants and/or fractional warrants to purchase at any time or from time to time, on or before October 15, 1937, a total of 9 and 2/5ths shares of first preferred stock at the price of $7.50 per share flat, if purchased on or before April 15, 1937, and at the price of $9 per share flat, if purchased thereafter and on or before October 15, 1937. (b) To holders of the 15-Year Debentures of the old company, as described above, for each $1,000 principal amount thereof, and for all accrued unpaid interest thereon from January 1, 1933 to July 1, 1936 (such unpaid interest amounting to $150 per $1,000 principal amount): (i) $1,150 principal amount of new debentures, bearing interest from January 1, 1936; and (ii) Warrants and/or fractional warrants to purchase a total of 9 and 1/5th shares of first preferred stock, at the prices and for the periods set forth in the above paragraph (a) (ii) with respect to the warrants delivered to holders of 10-Year Debentures. (c) To holders of general claims against the old company not entitled to priority of payment *153 under the provisions of the Bankruptcy Act (other than the above-mentioned debentures) for each $1,000 included in the principal amount of such claims as finally allowed by the court, plus interest on such principal amount to January 1, 1936: (i) $1,000 principal amount of new debentures; and (ii) Warrants and/or fractional warrants to purchase a total of 8 shares of first preferred stock, at the prices and for the periods set forth in paragraph (a) (ii) above, with respect to the warrants delivered to the holders of 10-Year Debentures. (d) To holders of 7 per cent preferred stock of the old company, of the par value of $50 per share, for each share of said 7 per cent preferred stock, and all rights represented thereby: (i) 6/10ths of a share of second preferred stock; and (ii) 1 share of new common stock. In addition, each holder of record of such 7 per cent preferred stock at the close of business on October 8, 1936 (or the assignee of his subscription right), for each share of such 7 per cent preferred stock held, was entitled to purchase not exceeding 37/100ths of a share of first preferred stock at a price of $5 per share flat, if purchased on or before December 7, 1936; *154 at $7.50 per share flat, if purchased on or before April 6, 1937; and at $9 per share flat, if purchased on or before October 8, 1937. The shares of first preferred stock to be purchased by such holders of 7 per cent preferred stock of the old company aggregated 50,321 shares, which were made available by General American to such holders of 7 per cent preferred stock pursuant to the order of the United States Circuit Court of Appeals for the Third Circuit dated September 24, 1936. (e) To holders of the common stock, without par value, of the old company, for each one share of such common stock, and all rights represented thereby: 1/4th of a share of new common stock. (f) To holders of the 7 per cent preferred stock and common stock of the old company who had theretofore duly subscribed for 88,710.71 shares of first preferred stock pursuant to the subscription rights given to such holders by Article IV of the Plan, and who theretofore had duly confirmed their subscriptions pursuant to the order of the District Court in that respect, and whose subscriptions had been duly accepted: The 88,710.71 shares of first preferred stock so subscribed, upon payment of the balance, if any, of *155 the subscription price. The 88,710.71 shares of first preferred stock comprised the 80,000 shares of such stock referred to above and the 8,710.71 shares of such stock made available by General American to take care of the oversubscription therefor, referred to heretofore. Out of 350,000 shares of first preferred stock received by it and its associates, General American made available the following: (a) 50,321 shares for purchase by holders of the 7 per cent preferred stock of the old company; (b) 34,766 shares for purchase by holders of the debentures of, and general claims against, the old company; (c) 8,710.71 shares for purchase by stockholders of the old company, to take care of an oversubscription of that amount by such stockholders. The following table shows the status of the securities before and after the reorganization: Holdings of Bondholders, Stockholders and Claimants
Before and After Reorganization
Before Reorganization
Principal
New
Description
Amount
Interest
Debentures
10-Year 5% Debentures
$3,000,000.00
$525,000.00
$3,525,000.00
15-Year 5% Debentures
387,500.00
58,125.00
445,625.00
General Claims
350,001.75
20,692.69
370,694.44
7% Preferred Stock
135,003.40 shs.
Common Stock
410,814 shs.
General American
*156 Holdings of Bondholders, Stockholders and Claimants
Before and After Reorganization
After Reorganization
New
New
New First
Second
Common
Preferred
Pfd.
Description
Shares
Shares
Shares
10-Year 5% Debentures
15-Year 5% Debentures
34,766   General Claims
7% Preferred Stock
136,003.4
50,321   81,602.04
Common Stock
88,710.71
General American
102,703.5
30,000  256,202.29
The holders of 10-Year Debentures and 15-Year Debentures were also given warrants to purchase certain amounts of first preferred stock. Likewise the holders of general claims against the old company and the holders of 7 per cent preferred stock of the old company were given similar rights. All of the first preferred stock so made available was so purchased, except 8,316 shares, which were issued to General American and its associates because of their ownership of certain shares of the 7 per cent preferred and common stocks of the old company. A total of 88,710.71 shares of first preferred stock was purchased by such subscribers under the Plan, the oversubscription of 8,710.71 shares of such stock being taken care of by General American and its associates, which *157 made 8,710.71 shares available for purchase, as stated heretofore. Upon all elections of directions and upon all matters requiring the vote or consent of stockholders of petitioner, the holders of the new common stock, first preferred stock and second preferred stock were, and are, entitled to one vote for each share of each such class of stock held by them, except that holders of shares of new common stock issued on conversion, prior to January 1, 1939, of second preferred stock, were entitled to only one-third vote per share of such new common stock so issued on conversion until January 1, 1939, and to one vote per share of such new common stock held thereafter. The reorganization was for a business purpose and not to avoid taxes. The petitioner acquired substantially all of the assets of the old company in the reorganization. The method of allocating the cost of the depreciable assets to the various groups of depreciable assets acquired by the petitioner from the old company used by the respondent in his notice of deficiency is conceded by the petitioner to be correct, viz., by allocating to each particular group of such assets a proportionate part of the total cost of all the *158 depreciable assets acquired, such proportionate part being based upon the ratio between the book value of the particular group of assets as shown by the petitioner's books, and the book value of all depreciable assets acquired as shown by the petitioner's books. The petitioner concedes that the salvage values, the remaining lives and the rates of depreciation determined by the respondent to be applicable to the various depreciable assets are correct. It also concedes the correctness of the respondent's determination of depreciable bases, remaining lives, salvage values and rates of depreciation with respect to new assets purchased by the petitioner and to depreciable assets acquired by the petitioner in the tax-free liquidation of the Pressed Steel Car Company of Illinois, Koppel Industrial Car & Equipment Company, and Fidelity Land Company, subsidiaries of the petitioner. The petitioner acquired the properties of the old company in exchange for voting stock, subscription rights to buy voting stock, non-voting debentures, the assumption of certain liabilities and its agreement to issue stock to certain third parties. The properties of the old company were not acquired solely in *159 exchange for all or a part of the petitioner's voting stock. Immediately after the transfer of assets from the old company to the petitioner neither the old company nor its creditors and stockholders had an 80 per cent control of the petitioner corporation. The securities delivered by the petitioner to the trustees, General American, and securityholders on July 29, 1936, pursuant to the Plan, were valued by the respondent at $6,985,130.20. Such value was the cost basis of property acquired to the petitioner, which issued its stock therefor. If the transaction was not tax-free. In that cost the respondent did not include the 30,000 shares of new common stock delivered by the petitioner to the trustees who transferred them to General American. Of the said sum of $6,985,130.20 the respondent allocated $4,195,286.54 to depreciable assets and land and $2,788,840.66 to other assets. The depreciable assets transferred to the petitioner by the old company and the trustees of the old company on July 29, 1936 consisted of buildings, equipment and machinery, office furniture and fixtures, drawings, patterns, templates and dies. The petitioner recorded such depreciable assets and land so acquired *160 on its books in the following amounts: LAND
McKees Rocks
$ 340,742.75
Allegheny
163,537.01
BUILDINGS
McKees Rocks
1,166,562.12
Allegheny
20,698.29
MACHINERY
McKees Rocks
2,204,124.36
Allegheny
20,698.29
Furniture
57,709.81
Drawings
102,828.76
Patterns
41,131.51
Templates
12,339.45
Dies
174,955.33
IMPROVEMENTS ON LEASED PROPERTY
Buildings
365,125.87
Machinery & equipment
114,342.29
$4,784,795.84
In its income tax return the petitioner deducted the amount of $136,714.56 as depreciation. In the notice of deficiency the respondent allowed the petitioner a deduction of $132,727.85 for depreciation for 1936, computed on the basis that the transaction in which the petitioner acquired the assets of the old company was one in which gain or loss was recognized, and accordingly, the basis for depreciation of such depreciable assets in the petitioner's hands was the cost thereof to the petitioner at the date of acquisition. During the taxable period here involved the petitioner paid cash dividends on its outstanding stock as follows: Stock
Date of Payment
Amount
5% Cumulative Con-
vertible 1st Pfd.
Dec. 24, 1936
$ 37,785.76
5% Cumulative Con-
vertible 2nd Pfd.
Dec. 24, 1936
84,967.29
$122,753.05
*161 In computing surtax upon the petitioner's undistributed net income, the respondent allowed dividends paid credit in the amount of only $82,753.05. On July 29, 1936 Koppel Industrial Car & Equipment Company, hereinafter called Koppel, a Pennsylvania corporation, became a wholly owned subsidiary of the petitioner. On November 10, 1936 Koppel was completely liquidated by the transfer of all of its assets to, and the assumption of all its liabilities by the petitioner in complete cancellation and redemption of all of Koppel's outstanding capital stock. During the period from January 1, 1936 to November 10, 1936, when it was completely liquidated, Koppel realized taxable net income in the amount of $61,294.20. As a result of Koppel's complete liquidation on November 10, 1936 the petitioner received the earnings of Koppel in the amount of $61,294.20. At the time the above-mentioned dividends declared (December 8, 1936), the board of directors of the petitioner adopted the following resolution: "RESOLVED, That for the purpose of complying with Article 27 (F-1) (c) of Regulations 94 of the Treasury Department, $40,000 of the dividends declared by this corporation at this meeting be allocated *162 and apportioned to the earnings and profits of Koppel Industrial Car & Equipment Company, a subsidiary of this corporation, for the current year prior to its complete liquidation on December 1st, 1936." On May 15, 1937, Koppel, pursuant to a twomonths extension granted by the respondent, filed its final corporation income and excessprofits tax return (on the accrual basis) for the period from January 1, 1936 to November 10, 1936, with the collector of internal revenue for the twenty-third district of Pennsylvania. A certified copy of the resolution quoted above was attached to Koppel's return. In its return Koppel claimed dividends paid credit of $40,000. In its own return for the period from July 29, 1936 to December 31, 1936 the petitioner claimed dividends paid credit of $82,753.05, which was the amount of cash dividends paid by the petitioner in 1936, less the portion of such dividends allocated to Koppel by virtue of the resolution adopted by the petitioner's board of directors on December 8, 1936. A certified copy of the resolution was attached to the petitioner's return. The respondent determined an income tax deficiency against Koppel in the amount of $9,661.58 for the *163 taxable year ended December 31, 1936 (January 1, 1936 to November 10, 1936, when Koppel was liquidated). The deficiency resulted from the respondent's disallowance to Koppel of any dividends paid credit. Koppel did not appeal the deficiency. Notice of transferee liability for the deficiency was sent to the petitioner and the petitioner appealed to this court in a proceeding entitled "Pressed Steel Car Company, Inc., Petitioner, v. Commissioner of Internal Revenue, Respondent, Docket No. 106756." In a memorandum opinion entered May 23, 1942, this Court determined that Koppel was entitled to dividends paid credit for the full amount of its taxable net income realized during the taxable year, and on the same day entered its decision that the petitioner was not liable at law or in equity for the deficiency against Koppel determined by the respondent. The respondent did not file a petition for review of this Court's decision in that proceeding. On October 14, 1936, pursuant to the Plan and confirmation order, the petitioner issued and delivered to the trustees $4,341,319.44 principal amount of new debentures. The debentures were dated as of January 1, 1936 and bore interest from that *164 date. Interest accrued on the debentures for the full calendar year 1936 in the amount of $216,560.98, and such amount was paid by the petitioner. In its corporation income and excess-profits tax return for the taxable period here involved the petitioner claimed as a deduction for interest accrued the amount of $216,560.98. In determining the deficiency the respondent allowed as a deduction for interest accrued on the debentures only the amount of $90,542.12, which was the proportionate part of the interest which accrued on the debentures allocable to the period from July 29, 1936 to December 31, 1936, and disallowed the remainder, $126,018.86. The petitioner concedes that the determination by the respondent in his amended answer with respect to the disallowance as a deduction of $641.95 as amortization of alleged interest accrued on the petitioners' new debentures is correct, but this shall not be construed as an construed as an admission by the petitioner that the respondent's disallowance as a deduction of the sum of $126,018.86 is correct. Opinion VAN FOSSAN, Judge: The first issue involves depreciation. The petitioner originally claimed a depreciation deduction of $136,714.54, *165 computed on the premise that the reorganization in 1936 by which it acquired the assets of the old company was a taxable transaction. On audit the respondent adopted the same premise as to the reorganization but by employing different values arrived at a deduction allowance of $132,727.85. He disallowed the resulting difference of approximately $4,000 in his notice of deficiency. By amended petition petitioner claims an increased deduction for depreciation in the amount of $285,377.13 on the basis of an increased value of depreciable assets. In his answer to the amended petition, respondent reverses his position as to the nature of the reorganization, now contending that it was tax-free and that as a consequence the depreciation allowance should be reduced from the $132,727.85 allowed in the notice of deficiency to $67,639.57. The result is an increased deficiency for which respondent makes claim. From the above narrative it is evident that the burden of proving the increased value of the depreciable assets rests on petitioner while respondent has the burden of proving that the transaction was a tax-free reorganization. On its books petitioner carried the stock issued by it at $7,572,636.50. *166 The respondent determined such value to be $7,285,130.20. From this figure he deducted $300,000 as the value of 30,000 shares of new common stock determined by him to have been issued in payment of organization expenses, making the net $6,985,130.20. He thereupon adjusted depreciable assets and land to a figure of $4,196,289.54. This figure was deducted from the total net figure above ($6,985,130.20) and the remainder ($2,788,840.66) allocated to "other assets". Petitioner has no quarrel with respondent's method of allocating values and accepts as a basis of further computation the figure allocated to "other assets". It contends, however, that respondent undervalued the stock issued and consequently, upon allocation, undervalued the depreciable assets. Petitioner asks us to fix the fair market value of the transferred assets at $12,500,000. This figure is based on the testimony of two "expert witnesses" who arrived at their conclusions by various methods of stock valuation but is in no respect based on an appraisal of the physical assets sought to be depreciated. From the above figure ($12,500,000) petitioner subtracts the sum of $2,788,840.66 as representing the value of "other *167 assets" as determined by the respondent, and uses the remainder ($9,711,159.34) as the cost basis of the land and depreciable assets. The question naturally obtrudes, - if the respondent is, as the petitioner insists, incorrect in his valuation of depreciable assets by what logic can it be said that he was correct as to the remainder? Or to state it conversely, - since the petitioner accepts the respondent's valuation of the "other assets" by what reasoning can it justify an attack on the value of the depreciable assets, both items being but allocated parts of the total value of the stock? Petitioner's case rests solely on the testimony of the two witnesses. In the process of valuation by petitioner's witnesses, there was no attempt to segregate the values as to land, depreciable assets, or other assets, or to allocate to each class an appropriate value. The character of the physical assets and rates of depreciation were not taken into account. In fact, no attempt was made to value the specific properties in question. The witnesses were content to give their opinion of value of the stock without tying the same to any specific theory or mathematical process. In the premises of this *168 case such testimony is not persuasive and is not acceptable as a basis for finding value. We are not compelled to accept such evidence even though uncontradicted. Uncasville Manufacturing Co. v. Commissioner, 55 Fed. (2d) 893. After careful study of the record we have concluded that there is no adequate foundation on which to rest a conclusion that the figure of $12,500,000 is justified. We are of the further opinion that on the record petitioner has not proved respondent's valuation to be in error. Since the petitioner has not sustained its burden of proving a greater value than that used by the respondent in the notice of deficiency the amount as there determined will stand as the maximum deduction for depreciation allowable to the petitioner. Whether or not this figure be reduced depends upon the answer to the question of the taxability of the reorganization, now to be discussed. The respondent, on whom rests the burden of proof, relies primarily on Harden F. Taylor, 43 B.T.A. 563, affirmed 128 Fed. (2d) 885, a case involving the same transaction presently before us, to support his contention *169 that the transaction in question was a tax-free reorganization. In that case, brought by a stockholder, this Court held that there was a reorganization under section 112 (g) (1) (B) of the Revenue Act of 1934, as amended by section 213 of the Revenue Act of 1939, in which the stockholder derived no gain from his exchange of stock of the old company for stock of the new company, petitioner here. In affirming our decision the Circuit Court of Appeals contented itself with quoting an excerpt from the opinion of this Court, adding little or no discussion thereto. The petitioner rests its contention that the transaction was not a tax-free reorganization on the proposition that it did not acquire the assets of the old company solely in exchange for voting stock as defined in section 112 (g) (1) (B) of the Revenue Act of 1936 [1], as amended by sections 213 (f) and (g) of the Revenue Act of 1939 [2], subsection (B) being the only subsection of section 112 (g) (1) claimed to be applicable to the facts in the case at bar. The respondent does not propose any other statutory provision under which the transaction could be held a tax-free reorganization. *170 The petitioner recounts that the Plan contemplated its issuance of new debentures and three classes of new stock; the exchange of the debentures, shares of stock, and stock subscription rights or warrants, for properties of the old company and the petitioner's assumption of unpaid liabilities of the old company and of the receivers and trustees, including the costs of reorganization and administration. Cash for working capital and various other expenses was to be secured from the subscriptions of the stockholders of the old company and of the General American syndicate. Pursuant to that plan the petitioner issued to the trustees its new debentures, its second preferred stock, and its new common stock, in amounts fixed by schedule, and agreed to deliver the specified shares of its first preferred stock. The trustees delivered to the petitioner the properties of the old company (except $750,000 in cash). The petitioner took possession of the properties and assumed certain liabilities of the old company, the receivers and the trustees. On this state of the facts the petitioner contends that it did not acquire the properties of the old company solely in exchange for its stock within *171 the meaning of the definitive provisions of section 112 (g) (1) (B) because rights and warrants to subscribe for stock, the assumption of liabilities of the trustees (they not being liabilities of the old company), and the exchange of $370,694.44 in new debentures for the claims of unsecured general creditors were additional media of exchange not comprehended within the phrase "solely for voting stock." The petitioner cites and relies on Helvering v. Cement Investors, Inc., 316 U.S. 527, and Helvering v. Southwest Consolidated Corporation, 315 U.S. 194. Because of differences in the facts and problems involved, these cases are of little help in the instant situation. Apparently the point which is the crux of the present case was not raised, certainly not stressed, in our former consideration of this problem in the Taylor case. The Circuit Court of Appeals affirmed the Taylor case strictly on that part of our opinion which related to the principle that the issuance of bonds of the old company for bonds of the new company constituted an assumption of the former's liability by the latter. The facts before us *172 show that, in addition to giving the voting stock for the properties acquired, petitioner gave rights or warrants to purchase stock at fixed prices. If these rights or warrants were valuable, the transfer was not "solely for voting stock". Such fact would preclude the application of section 112 (g) (1) (B). Respondent has assumed the burden of proving that the transaction was non-taxable. As a part of this burden it was his obligation to prove that the warrants were not of value. This he has not done, and for this reason decision on this point must go against him. We hold that respondent has failed to demonstrate that he was wrong in his original determination that the transaction was taxable. Therefore, the amount of $132,727.85 will stand as the depreciation deduction allowable to the petitioner. The second issue presents the deductibility of interest on the petitioner's debentures dated as of January 1, 1936 but issued on July 29, 1936. In its income tax return for the taxable year 1936 the petitioner deducted $216,560.98 as interest accrued on its debentures for the entire calendar year of 1936. The petitioner was incorporated July 24, 1936 and began business on July 29, 1936. *173 The respondent allowed only the interest on the debentures amounting to $90,542.12, representing the period during which the petitioner was in existence and was doing business. On the date of the issuance of the debentures the petitioner became liable to pay interest thereon at 5 per cent, calculated from January 1, 1936. The fact that the petitioner was liable to pay the interest for the entire year of 1936 is not controverted. The respondent argues that if a tax-free reorganization took place the interest was deductible only by the old company; if gain or loss was recognized in the reorganization, the interest prior to July 29, 1936 represents a part of the purchase price. We have held in a number of cases that interest accrued or paid under the circumstances herein set forth is deductible. Ernst Kern Co., 1 T.C. 249; Oregon Pulp & Paper Co., 47 B.T.A. 772; petition for review dismissed November 2, 1943, - Fed. (2d) -; Columbia River Paper Mills, 43 B.T.A. 104, affirmed 126 Fed. (2d) 1009. The obligation was the petitioner's own and it promised to pay interest *174 as such on its debentures from January 1, 1936. Such interest accrued when the petitioner undertook the liability to pay it. It is immaterial at what rate the interest was computed or what its aggregate amount was during 1936. The petitioner agreed to pay it and properly accrued it on its books. The respondent relies on Commissioner v. Drovers Journal Publishing Co., 135 Fed. (2d) 276. In that case the Circuit Court of Appeals for the Second Circuit reversed our memorandum opinion which was consistent with our decisions in the above cited cases. With due respect to that Court, we reaffirm our position and hold that the interest in the sum of $216,560.98 is deductible. In the third issue the petitioner contends that it is entitled to a dividends-paid credit on the full amount of dividends paid by it within the taxable year. The facts have been stated in detail and need not be repeated here. The respondent argues that since the petitioner "elected" by the resolution of December 8, 1936 to allocate to Koppel $40,000 of the dividends paid, it is bound by that election and must deduct that amount from its dividends-paid credit. The resolution sets forth *175 that it was adopted "for the purpose of complying with Article 27 (F-1)(c), Regulations 94 of the Treasury Department." In Helvering v. Credit Alliance Corporation, 316 U.S. 107, the Supreme Court held that Article 27 (f) is an improper regulation, contradictory to the terms of the subsection (section 27 (f)). Hence, it is obvious that the petitioner's action, based on an unauthorized regulation which does not properly interpret the law, is of no effect, does not bind the petitioner, and must be disregarded. Section 27 (a) of the Revenue Act of 1936 provides that "for the purpose of this title, the dividends-paid credit shall be the amount of dividends paid during the taxable year." The petitioner paid $122,753.05 in dividends during 1936, and a credit for that amount is allowed. Decision will be entered under Rule 50. Footnotes
1. SEC. 112. RECOGNITION OF GAIN OR LOSS. * * * * *
(g) Definition of Reorganization. - As used in this section and section 113 - (1) The term "reorganization" means * * * (B) the acquisition by one corporation in exchange solely for all or a part of its voting stock: of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of another corporation; or of substantially all the properties of another corporation; * * * ↩
2. SEC. 213. ASSUMPTION OF INDEBTEDNESS. * * * * *
(f) Assumption of Liability Not Recognized Under Prior Acts. - (1) Where upon an exchange occurring in a taxable year ending after December 31, 1923, and beginning before January 1, 1939, the taxpayer received as part of the consideration property which would be permitted by subsection (b) (4) or (5) of section 112 of the Revenue Act of 1938, or the corresponding provisions of the Revenue Act of 1924 or subsequent revenue Acts, to be received without the recognition of gain if it were the sole consideration, and as part of the consideration another party to the exchange assumed a liability of the taxpayer or acquired from the taxpayer property subject to a liability, such assumption or acquisition shall not be considered as "other property or money" received by the taxpayer within the meaning of subsection (c), (d), or (e) of section 112 of the Revenue Act of 1938, or the corresponding provisions of the Revenue Act of 1924 or subsequent revenue Acts, and shall not prevent the exchange from being within the provisions of subsection (b) (4) or (5) of section 112 of the Revenue Act of 1938, or the corresponding provisions of the Revenue Act of 1924 or subsequent revenue Acts; except that if, in the determination of the tax liability of such taxpayer for the taxable year in which the exchange occurred, by a decision of the Board of Tax Appeals or of a court which became final before the ninetieth day after the date of enactment of the Revenue Act of 1939, or by a closing agreement, gain was recognized to such taxpayer by reason of such assumption or acquisition of property, then for the purposes of section 112 of the Revenue Act of 1938, and corresponding provisions of the Revenue Act of 1924 or subsequent revenue Acts, such assumption or acquisition (in the amount of the liability considered in computing the gain) shall be considered as money received by the taxpayer upon the exchange. (2) Paragrah (1) shall be effective with respect to the Revenue Act of 1924 and subsequent revenue Acts as of the date of enactment of each such Act. (g) Definition of Reorganization Under Prior Acts. - (1) Section 112 (g) (1) of the Revenue Acts of 1938, 1936, and 1934 are amended to read as follows: "(1) The term 'reorganization' means (A) a statutory merger or consolidation, or (B) the acquisition by one corporation, in exchange solely for all or a part of its voting stock, of substantially all the properties of another corporation, but in determining whether the exchange is solely for voting stock the assumption by the acquiring corporation of a liability of the other, or the fact that property acquired is subject to a liability, shall be disregarded; or the acquisition by one corporation in exchange solely for all or a part of its voting stock of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of another corporation, or (C) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its shareholders or both are in control of the corporation to which the assets are transferred, or (D) a recapitalization, or (E) a mere change in identity, form, or place of organization, however effected." (2) The amendments made by paragraph (1) to the respective Acts amended shall be effective as to each of such Acts as of the date of enactment of such Act.↩