Japanese Trading Company, Limited, et al. [1] v. Commissioner. Japanese Trading Co. v. Commissioner
Docket Nos. 1027-63 - 1029-63.
United States Tax Court
T.C. Memo 1966-78; 1966 Tax Ct. Memo LEXIS 204; 25 T.C.M. (CCH) 441; T.C.M. (RIA) 66078; April 15, 1966
James R. Zuckerman, 350 Fifth Ave., New York, N. Y., for the petitioners. Leon M. Kerry, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined the following deficiencies in the income taxes of petitioners: Petitioner
Docket No.
Year
Deficiency
Japanese Trading Company, Limited
1027-63
1959
$24,384.40
A. Zerkowitz & Co., Inc.
1028-63
1958
55,048.84
1959
85,188.10
Overseas Shoe Corporation
1029-63
3-2-59 to
47,180.47
12-31-59
*205 Several issues raised in Docket No. 1028-63 have been settled by stipulation of the parties and will be given effect in the Rule 50 computation. The only issue remaining for decision is whether an importer, using the accrual method of accounting, may accrue and deduct customs duties in excess of the amounts declared and paid by it during the years of importation when such excess amounts are subsequently contested by it in later years. Findings of Fact Most of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Each petitioner herein was a New York corporation which maintained its principal office at 82 Beaver Street in New York, New York, and filed its tax returns with the district director of internal revenue for the Manhattan District of New York during the taxable years in question. Each petitioner maintained its books and records and prepared its income tax returns on the accrual basis of accounting. During the years involved herein, petitioner A. Zerkowitz & Co., Inc. (hereinafter called Zerkowitz), was principally engaged in the business of importing rubber boots and footwear *206 commonly known as sneakers; petitioner Overseas Shoe Corporation (hereinafter called Overseas) was engaged in the business of wholesale footwear distribution in New York City, principally distributing footwear which was imported by Zerkowitz; and petitioner Japanese Trading Company, Limited (hereinafter called Japanese), was engaged in the business of wholesale footwear distribution throughout the United States outside of New York City, principally distributing footwear imported by Zerkowitz. Prior to their taxable year 1958, Zerkowitz was principally engaged in importing sweaters, and Japanese and Overseas were principally engaged in selling such sweaters. Zerkowitz did not begin importing the footwear previously described until sometime during their taxable year 1958, and Japanese and Overseas did not begin selling such footwear until sometime in 1959. The following is the procedure involving customs duties when goods subject to the tariff involved herein were imported into the United States: 1. The importer (or its customs broker) files a Consumption Entry form with the Collector of Customs (hereinafter referred to as the Collector) at the port of entry, and the duty declared *207 thereon is paid. In addition, the importer (or its customs broker) posts a bond with the Collector guaranteeing the payment of any duties which may subsequently and ultimately be found to be due on the goods. The goods are then released from Customs. 2. At a subsequent time (which may be months later) Customs officials review the Consumption Entry form and their files to determine whether the goods were valued properly (this is called "appraisement") and whether the amount of the duty, including the rate to be applied, was properly computed (this is called "liquidation of the entry"). The importer (or its customs broker) is notified of any proposed changes in the valuation of the goods on appraisement and of any proposed changes in the liquidated amount of the duty, including proposed changes in rate of duty to be applied. 3. If the importer disagrees with the appraisement (valuation), it may by letter file an appeal for reappraisement with the United States Customs Court. This is known as an "appeal case." No payment of additional duty is required until after the appeal is finally decided. 4. If the importer disagrees with the liquidation of the entry (i.e., the Customs officials' *208 determination of the rate of duty to be applied), it files a letter of protest with the Collector. If the protest is rejected by the Collector, upon the payment by the importer of the total liquidated amount, the Collector transmits the file to the United States Customs Court for determination. This is known as a "protest case." During the years involved herein, Zerkowitz imported, among other items, a type of footwear with upper portions partially made of leather on which the rate of duty (based on export value at place of origin) was 20 percent ad valorem; but if such footwear was for "men's, youth's, or boy's," the rate of duty was 10 percent ad valorem. The Consumption Entry forms filed for these entries declared in part that the shoes were for men, youths, or boys subject to duty at the 10 percent rate and the declared duty was paid by Zerkowitz (or its customs broker for its account). However, duty at the 20 percent rate on each such entry was, at the same time as the payment of the 10 percent duty, accrued on the books of Zerkowitz. The additional 10 percent was accrued as accounts payable and charged as a current cost of goods sold, although no determination of the higher *209 rate of duty on these entries had then been made by the Customs officials, or paid by Zerkowitz. Customs officials, over 12 months later, determined that such footwear was also for other persons and the duty thereon was liquidated and assessed at the 20 percent rate. Such liquidations were protested by Zerkowitz and some of the additional duties in regard thereto were paid by Zerkowitz subsequent to 1959. Some of these protest cases were heard by the United States Customs Court and the claim made in each was overruled in A. Zerkowitz & Co., Inc. v. United States, Protests 60/7384, etc. (C.D. 2525), decided April 7, 1965. In these years Zerkowitz also imported, among other items, rubber footwear and footwear the upper portions of which were in chief value of cotton or other fibers with soles of either rubber, substitutes for rubber, or plastic (a different model of footwear than that referred to above). For customs duty purposes, such footwear is subject to appraisement (valuation) based on the American selling price of like or similar merchandise produced in the United States. Customs officials have designated footwear manufactured by the United States Rubber Company (or that of *210 other domestic manufacturers of comparable price) as the merchandise produced in the United States which is like or similar to such imported footwear for purposes of determining the American selling price for appraisement purposes. The Consumption Entry forms filed for these entries declared a value based either on the price paid by Zerkowitz to its suppliers in the Far East or on the American selling price of domestic footwear which sold for less than the footwear designated by Customs officials for this purpose. The declared duty was paid by Zerkowitz (or its customs broker on its behalf). Also, an additional amount of duty, based on the higher American selling price of the footwear generally used by Customs officials for this purpose, was at the same time accrued on the books by Zerkowitz as accounts payable and charged as a current cost of goods sold although no determination of the higher valuation had been made by Customs officials on these entries. None of this additional amount of duty has ever been paid. Over 12 months later, Customs officials determined that the appraised value of such importations was in excess of the value declared at the time of entry. In each such instance *211 Zerkowitz received a notice from the Collector and subsequently filed an appeal for a reappraisement by the United States Customs Court. These appeal cases were decided on November 4, 1965, by the United States Customs Court in favor of the Treasury Department in A. Zerkowitz & Co., Inc. v. United States, Reap. Dec. 11095, 100 Treas. Dec. No. 44. In 1958 the unpaid additional import duties referred to above, which Zerkowitz accrued on its books, totaled $65,361.40. Such amount was deducted on its income tax return for 1958 by increasing cost of goods sold. During 1959 Zerkowitz accrued on its books unpaid import duties, as referred to above, in the total amount of $345,385.27. Of this amount $50,149.94 and $95,015.49 were invoiced to Japanese and Overseas, respectively, representing the amounts of such additional unpaid import duties on goods which Zerkowitz sold to Japanese and Overseas. Both Japanese and Overseas accrued such amounts on their books as accounts payable and deducted the amounts on their income tax returns for 1959 by increasing cost of goods sold. Consequently, the difference of $200,219.84 remained on Zerkowitz's books as an accrual and Zerkowitz deducted that amount *212 on its income tax return for 1959. The amount of duty accrued by petitioners for each year was matched to the sale during the same year of the items involved in the particular importation for which the duty was accrued. This method of accounting has been consistently followed by the petitioners. In the preparation of petitioners' income tax returns for the years in issue their accountant accrued and deducted the amounts of unpaid customs duties in reliance on the advice contained in a letter from their tax attorney dated April 20, 1960, addressed to the president of Zerkowitz which reads, in part, as follows: Your corporation imports shoes into the United States. Such importations are subject to customs duties. While the corporation's liability to pay duty is clear and attaches at the time of importation, the amount of the duty depends upon the proper classification and valuation of the import, matters as to which differences of opinion may exist. In practice, your corporation makes a deposit of the minimum amount of duty that might be imposed and files a bond for any additional duty that may be found to be due. There is no statute of limitations or other period within which *213 the Customs Service must assess duty with respect to a particular import, and in many cases a number of years elapse before the various administrative or other proceedings are completed and the correct amount of the duty is finally determined. However, on the basis of your past experience you can make an accurate estimate of the amount of duty that is likely to be determined by the Customs Service. * * *
Because of the Dixie Pine decision and the regulations thereunder, it is possible that on audit your corporation may be disallowed a deduction in 1959 for the duty which you reasonably anticipate will be assessed against it on account of importations in that year. On the other hand, the Keller-Dorian decision and other authorities referred to pose the threat that if you do not take the deduction for 1959 it will not be allowed in any subsequent year. Accordingly, you would, in our opinion, be well advised to accrue and deduct the duty on the 1959 income tax returns of the corporation. Each petitioner received a notice of deficiency disallowing the deduction claimed for unpaid import duties because they were "not paid but contested." Opinion Section 461(a) of the Internal Revenue Code *214 of 1954 provides that the amount of any deduction or credit allowed "shall be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income." The applicable provisions of the regulations are set forth below. [2]
*215 Beginning in 1958 and continuing through 1959, Zerkowitz imported footwear into the United States. It filed Consumption Entry forms with the Bureau of Customs in which it declared that the imported merchandise had certain values and that import tariffs were at certain rates, thus resulting in stated duties which it paid. Zerkowitz entered on its books the amount of the duties declared and paid. Zerkowitz also accrued on its books, but did not declare or pay, additional duties which it unilaterally decided might later be found to be due if the Bureau of Customs determined that some of the imported footwear had higher values or that higher tariff rates applied. In 1959 part of the declared duties and part of the undeclared and accrued duties were charged to the other petitioners, Japanese and Overseas. Each petitioner deducted both the declared and undeclared duties on their respective income tax returns. During each of the taxable years 1958 and 1959 no determination was made by Customs officials that any duties beyond those declared were owed, nor were there any negotiations regarding additional duties for either year. Respondent allowed only the deductions for the declared and *216 paid import duties. Consequently, we now have before us the narrow issue as to whether deductions for undeclared and unpaid import duties are allowable in 1958 and 1959 when they were accrued by the petitioners. The parties agree that each taxable year "must be treated as a separate unit, and all items of gross income and deductions must be reflected in terms of their posture at the close of such year." United States v. Consolidated Edision Co., 366 U.S. 380, 384 (1961). In order for tax accrual accounting to provide a meaningful picture, the expense items or deductions should be included in the same period as the income items they help to produce. In other words, interrelated items of expense and income should be matched in some particular period. To achieve this result, and to provide the touchstone for determining the proper year of deductibility, the Supreme Court in United States v. Anderson, 269 U.S. 422 (1926), created what is called the "all events" test whereby an accrual basis taxpayer may deduct taxes (or other expense items), though not paid, if all the events fixing the fact and the amount of the taxpayer's liability have transpired. The "all *217 events" test is now embodied in section 1.461-1(a)(2), Income Tax Regs. A refinement or amplification of the "all events" test was made by the Supreme Court in Dixie Pine Products Co. v. Commissioner, 320 U.S. 516, 519 (1944), where it said: this cannot be the case where the liability is contingent and is contested by the taxpayer. n8 Here the taxpayer was strenuously contesting liability in the courts and, at the same time, deducting the amount of the tax, on the theory that the state's exaction constituted a fixed and certain liability. This it could not do. It must, in the circumstances, await the event of the state court litigaton and might claim a deduction only for the taxable year in which its liability for the tax was finally adjudicated. n9 [Footnotes omitted.] Since Dixie Pine the concept of "contest" has been expanded to include not only litigation in the courts but also a dispute formally lodged with the tax authorities. [3] See Great Island Holding Corporation, 5 T.C. 150 (1945); Southwest Exploration Co. v. Riddell, 232 F. Supp. 13 (S.D.Cal., 1964). *218 Respondent contends that the liability for the undeclared and unpaid duties was not fixed, either in fact or amount, in the years of importation and, therefore, such duties are not deductible in 1958 and 1959. To the contrary, the petitioners contend that the undeclared and unpaid duties were properly accrued as deductions in the respective years of importation even though the amounts thereof were subsequently contested in later years in the United States Customs Court. Petitioners further state that when they filed their income tax returns for the years in question and accrued as deductions the undeclared and unpaid import duties, they relied on the opinion in Keller-Dorian Corp. v. Commissioner, 153 F. 2d 1006 (C.A. 2, 1946), affirming a Memorandum Opinion of this Court. See also Oregon Pulp & Paper Co., 47 B.T.A. 772 (1942); and Standard Paving Co., 13 T.C. 425 (1949), affirmed on other issues 190 F. 2d 330 (C.A. 10, 1951). Just as in this case, Keller-Dorian specifically involved the reappraisal of an importation and the determination by the Bureau of Customs of additional duties which were paid by the taxpayer in a year later *219 than the year of importation. Agreeing with the position of the Commissioner, this Court and the Court of Appeals concluded that the payment of the customs duties was not deductible by the accrual basis taxpayer in the year of payment, but that the amounts of additional duties were deductible only in the year of importation because "all events" had occurred in that year to fix the liability. It is obvious that the petitioners' awareness of the Keller-Dorian decision created a dilemma for them. If they had failed to accrue additional import duties in the years of entry (1958 and 1959), they would have lost their rights to claim them in the year of actual payment. In Keller-Dorian it was the taxpayer who contended that the liability to make the additional payments of import duties was not fixed and that the amount was not ascertainable in the years of importation, citing Dixie Pine Products Co. v. Commissioner, supra, and Security Flour Mills v. Commissioner, 321 U.S. 281 (1944). The Commissioner was relying upon our opinion in Guy T. Gibson, Inc., 46 B.T.A. 1015, which held that the liability for additional customs duties accrued at the time certain *220 merchandise was imported in 1929 and 1930, although litigation as to the liability was not terminated until 1936. We sided with the Commissioner in Keller-Dorian and said that Dixie Pine and Security Flour Mills did not support the taxpayer for two reasons: (1) Each decision turned "more on the question of the events fixing the liability rather than events fixing the amount of tax sought to be accrued;" and (2) in each case the Supreme Court "stressed the fact that the taxpayer was contesting its liability and at the same time [in the same taxable year] deducting the amount thereof from gross income on the theory that its liability had become fixed." But now, with the shoe on the other foot, we find the respondent here relying on Dixie Pine to defeat the accrual of the additional import duties in the years of importation. It is clear to us that respondent's position in the instant case was not the law when Keller-Dorian was decided; it was not the law in 1958 and 1959 when the income tax returns of the petitioners were prepared and filed; and it is not the law today. As justification for its present position, respondent says that this Court abandoned the Keller-Dorian rationale beginning *221 with Gunderson Bros. Engineering Corp., 16 T.C. 118 (1951), and a number of subsequent cases including Agency of Canadian Car & Foundry Co., Ltd., 39 T.C. 15 (1962). We disagree. While it is true that the Keller-Dorian Corporation did not contest the additional duty attributed to the reappraisal, it is also true that these petitioners were not "contesting" the additional import duties during the years of importation and accrual because such additional duties were not determined to be due by the Bureau of Customs until over 12 months after the importation occurred. The uncontroverted facts in this case show that when the petitioners closed their books at the end of 1958 and 1959 the additional duties accrued for each year were not being "contested." In fact, it was entirely possible that they would later have been paid without any dispute. We view the subsequent existence or nonexistence of a "contest" as being immaterial and irrelevant. Keller-Dorian Corp. v. Commissioner, supra at p. 1007; and cf. Burnet v. Sanford & Brooks Co., 282 U.S. 359 (1931); Lewyt Corporation v. Commissioner, 349 U.S. 237 (1955). We are *222 convinced that the customs duties accrued by these petitioners qualify under the "all events" test. That the liability was fixed cannot be disputed. 19 C.F.R. 8.1 (revised as of January 1, 1965); [4]Keller-Dorian Corp. v. Commissioner, supra. All the facts upon which the calculations depended were fixed before the expiration of the years of accrual and thus we do not have here the same situation that was present in Lucas v. American Code Co., 280 U.S. 445 (1930). It is true that final liquidation waited the examination of the customs officials. However, this merely meant a check of the original mathematical computations and the importer's application of the customs laws and regulations to the facts as they existed at the time of entry. The computations may have been uncertain but their bases were unchangeable. As we have said previously, we do not think the accrual of duties higher than those declared and paid transmuted such higher duties into "contested" taxes within the ambit of the Dixie Pine decision. In our opinion the mere fact that X dollars of customs duties were declared and paid to the customs authorities while Y dollars were *223 deducted on petitioners' income tax returns is not sufficient to show that the difference between Y and X is being contested. The customs laws and regulations contain provisions under which importers may withdraw their merchandise from the custody of the customs authorities prior to final liquidation of the entry by paying estimated duties or duties less than the maximum possible rate of duty prescribed by law, and by filing a customs bond (in an amount approved by the authorities) as security for any further duties that may be determined due upon final liquidation of the entry. [5] See 19 C.F.R. 8.28 (relating to release under bond; deposit of estimated duties; permit) and 19 C.F.R. 25 (relating generally to customs bonds). *224 We see no reason to question the business judgment of petitioners in paying the minimum duties due and posting bond to secure any further duties that might be determined due upon final liquidation, especially since the customs laws and regulations provide for such measures. To be sure, a close reading of the customs laws and regulations in force during the years in issue persuades us that petitioners had good reason to believe that ultimate liquidation of their entries would prove them liable for the higher rates rather than the lower ones which they declared and paid. This in fact happened in 1965 when the United States Customs Court ruled in favor of the Treasury Department. Alternatively, respondent argues that the filing of the Consumption Entry forms in amounts less than petitioners accrued as cost of goods sold for the shipments constituted the commencement of a "contest" at the time of their filing. In other words, the respondent is saying that petitioners denied that they owed any customs duties greater than those specified in their Consumption Entry forms. We think this argument lacks merit. See Keller-Dorian Corp. v. Commissioner, supra; Oregon Pulp & Paper Co., supra; *225 Standard Paving Co., supra; H. E. Harman Coal Corp., 16 T.C. 787 (1951); Gulf States Utilities Co., 16 T.C. 1381 (1951); Denise Coal Co., 29 T.C. 528 (1957); Colt's Manufacturing Co., 35 T.C. 78 (1960); and Dravo v. United States, 348 F. 2d 542 (Ct. Cl. 1965); but compare Gunderson Bros. Engineering Corp., supra; and Agency of Canadian Car & Foundry Co., supra, both of which we regard as distinguishable on their facts. Also compare Eleanor M. Lutz, 45 T.C. No. 60 (March 31, 1966), in which we did not reach the "contest" question because we thought the "all events" test required denial of the deduction for State retail sales tax on the "pertinent factors" there involved. But here, by contrast, this Court and the Second Circuit have already held in the Keller-Dorian decision that "all events" occurred to establish the liability of an importer of customs duties when the goods arrived at the port of entry. Moreover, the enactment of section 461(f) (section 223(a)(1) of the Revenue Act of 1964) is indicative of the latest congressional intent to restrict, rather than expand, *226 the effect of the concept of "contest" in tax cases. This is likewise borne out by the definition of "contest" now contained in section 1.461-2(b)(2) of the regulations. Finally, we emphasize that this is not a case in which the accrued liability is due to a third party. It is one in which the accrued liability is due to the Bureau of Customs, a part of the Treasury Department, which has established in the United States Customs Court that the duties were due and payable at the time of entry into the United States. This is consistnt with the position taken by petitioners in their income tax returns. To accept respondent's position on these facts would result in a complete distortion of petitioners' income. Cf. Guy T. Gibson, Inc., supra at p. 1019. Accordingly, we hold for the petitioners on this issue. To reflect the agreement of the parties on other issues. Decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: A. Zerkowitz & Co., Inc., Docket No. 1028-63; and Overseas Shoe Corporation, Docket No. 1029-63.↩
2. Sections 1.461-1(a)(2) and 1.461-1(a)(3), Income Tax Regs., provide: (2) Taxpayer using an accrual method. Under an accrual method of accounting, an expense is deductible for the taxable year in which all the events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy. However, any expenditure which results in the creation of an asset having a useful life which extends substantially beyond the close of the taxable year may not be deductible, or may be deductible only in part, for the taxable year in which incurred. While no accrual shall be made in any case in which all of the events have not occurred which fix the liability, the fact that the exact amount of the liability which has been incurred cannot be determined will not prevent the accrual within the taxable year of such part thereof as can be computed with reasonable accuracy. For example, A renders services to B during the taxable year for which A claims $10,000. B admits the liability to A for $5,000 but contests the remainder. B may accrue only $5,000 as an expense for the taxable year in which the services were rendered. In the case of certain contested liabilities in respect of which a taxpayer transfers money or other property to provide for the satisfaction of the contested liability, see § 1.461-2. Where a deduction is properly accrued on the basis of a computation made with reasonable accuracy and the exact amount is subsequently determined in a later taxable year, the difference, if any, between such amounts shall be taken into account for the later taxable year in which such determination is made. (3) Other factors which determine when deductions may be taken. (i) Each year's return should be complete in itself, and taxpayers shall ascertain the facts necessary to make a correct return. The expenses, liabilities, or loss of one year cannot be used to reduce the income of a subsequent year. A taxpayer may not take advantage in a return for a subsequent year of his failure to claim deductions in a prior taxable year in which such deductions should have been properly taken under his method of accounting. * * *↩
3. The term "contest" is now defined in section 1.461-2(b)(2), Income Tax Regs., in the following manner: (2) Definition of the term "contest." Any contest which would prevent accrual of a liability under section 461(a)↩ shall be considered to be a contest in determining whether the taxpayer satisfies paragraph (a)(1)(i) of this section. A contest arises when there is a bona fide dispute as to the proper evaluation of the law or the facts necessary to determine the existence or correctness of the amount of an asserted liability. It is not necessary to institute suit in a court of law in order to contest an asserted liability. An affirmative act denying the validity or accuracy, or both, of an asserted liability to a person who is asserting such liability, such as including a written protest with payment of the asserted liability, is sufficient to commence a contest. Thus, lodging a protest in accordance with local law is sufficient to contest an asserted liability for taxes. It is not necessary that the affirmative act denying the validity or accuracy, or both, of an asserted liability be in writing if, upon examination of all the facts and circumstances, it can be established to the satisfaction of the Commissioner that a liability has been asserted and contested. [Emphasis supplied.]
4. LIABILITY FOR DUTIES § 8.1 Liability of importer for duties (a) Unless otherwise specifically provided by law, duties accrue upon imported merchandise on arrival of the importing vessel within a customs port with intent then and there to unlade, or at the time of arrival within the limits of the United States if the merchandise arrives otherwise than by vessel. (b) Unless relieved by law or regulations, the liability for duties, both regular and additional, attaching on importation constitutes a personal debt due from the importer to the United States which can be discharged only by payment in full of all duties legally accruing. It may be enforced notwithstanding the fact that an erroneous construction of law or regulation may have enabled the importer to pass his goods through the customhouse without such payment. It also constituted a lien upon the merchandise imported which may be enforced while such merchandise is in the custody or subject to the control of the United States. ↩
5. The Tariff Act of 1930, sec. 499, as amended; 19 U.S.C. 1499, provides as follows: Imported merchandise, required by law or regulations made in pursuance thereof to be inspected, examined, or appraised, shall not be delivered from customs custody, except under such bond or other security as may be prescribed by the Secretary of the Treasury to assure compliance with all applicable law, regulations, and instructions which the Secretary of the Treasury or the Customs Service is authorized to enforce, until it has been inspected, examined or appraised and is reported by the appraiser to have been truly and correctly invoiced and found to comply with the requirements of the laws of the United States. * * *↩